## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

RECEIVED

2007 MAY 24 P 2: 37

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Johnnie Bogan, as next best friend    *
on behalf of her minor daughter, J.B.    *
     *
       Plaintiffs,      *
     *
vs.      *    2:06-376-SRW
     *
Town of Autaugaville, et al.,      *
     *
       Defendants.      *

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
### MEMORANDUM BRIEF IN SUPPORT THEREOF

COME NOW Defendants, Town of Autaugaville and Chief LeVan Johnson, and move the

Court for summary judgment as to each of Plaintiff's claims pursuant to Rule 56 of the Federal Rules

of Civil Procedure.  Defendants support their motion for summary judgment with the following:

1.      Pleadings;

2.      Argument in support of Defendant's motion for summary judgment;

3.      Deposition of J. B., attached hereto as Exhibit 1;

4.      Deposition of Larry Butler, attached hereto as Exhibit 2.

### NARRATIVE SUMMARY OF UNDISPUTED FACTS

On November 19, 2004, Levan Johnson, the Chief of Police for the Town of Autaugaville,

also served as the school resource officer for Autaugaville High School. (Exhibit 2, p. 8, ll. 9-20, p.

10, ll. 22-23, p. 11, ll. 1-5).  On that day, Chief Johnson was at the high school campus. (Complaint).

As resource officer, the Chief delivered presentations to the students on safety and security issues,

as well as assisted the principal of the school to ensure the safety and security of the campus. (Exhibit 2, p. 11, ll. 6-12).

On the day of the incident, Chief Johnson had been in the fifth and sixth grade building[1]. (Exhibit 1, p. 24, ll. 7-9). As Chief Johnson walked through the breezeway between the fifth and sixth building and the cafeteria, J. B., who was seventeen at the time, and five of her friends were standing in the breezeway talking. (Exhibit 1, p. 24, ll. 17-20). Chief Johnson asked the group where they were supposed to be at that time period. (Exhibit 1, p. 24, ll. 16-18). The girls ignored Chief Johnson, and he asked the question again. (Exhibit 1, p. 25, ll. 1-8). This time, J. B. responded, "Ain't got nowhere to be". (Exhibit 1, p. 25, ll. 9-13). At that point, half the girls, including J. B., walked into the building. (Exhibit 1, p. 28, ll. 2-11). The girls walked into the restroom through the drink room area. (Exhibit 1, p. 28, ll. 5-20). While J. B. was in the restroom, Chief Johnson stood outside the bathroom in the doorway and asked if she was in there. (Exhibit 1, p. 31, ll. 1-21). J. B. emerged from the bathroom but immediately returned when she saw Chief Johnson, stating that she had to get a paper towel to blow her nose. (Exhibit 1, p. 32, ll. 2-9).

When J. B. finally came out of the bathroom, she walked past Chief Johnson and back toward the lunchroom. (Exhibit 1, p. 33, ll. 4-11). Chief Johnson asked her to follow him to the assistant principal's office. (Exhibit 1, p. 32, ll. 10-15). J. B. ignored him and continued walking to the lunchroom. (Exhibit 1, p. 33, ll. 12-22). J. B. entered the lunchroom and sat down at the lunchroom table with the rest of her class. (Exhibit 1, p. 34, ll. 18-22). Chief Johnson went over to her and told her that if she did not come with him to the office, he was going to grab her by the arm, embarrassing

---

[1] The fifth and sixth grade building for the Autaugaville public school is located adjacent to the high school buildings.

2

her in front of her friends. (Exhibit 1, p. 35, ll. 17-22). She responded that "ain't no motherfucker going to mess with me", and told Chief Johnson she was going to sue him. (Exhibit 1, p. 37, ll. 8-17; p. 41, ll. 5-8). Chief Johnson then went to a lunchroom supervisor and asked for the supervisor's help to get J. B. to go to the principal's office. (Exhibit 1, p. 37, ll. 20-23; p. 38, ll. 1-5). At this time, J. B. went to her teacher and while she told her teacher what was happening, her teacher told the class to return to the classroom. (Exhibit 1, p. 39, ll. 20-23, p. 40, ll. 1-2). As J. B. was returning to her classroom, Chief Johnson put his hand on her shoulder. (Exhibit 1, p. 42, ll. 17-23). An altercation ensued between the two.

While some facts are disputed, J. B. admits that she cursed Chief Johnson and bit him. (Exhibit 1, p. 45, ll. 1-6; p. 65, ll. 9-12). Ultimately the fight stopped, and both Chief Johnson and J. B. went to the principal's office, along with J. B.'s teacher. (Exhibit 1, p. 54, ll. 1-17). J. B. was taken to the police department, where she was later released to her step-father. (Exhibit 1, p. 56, ll. 18-20, p. 64, ll. 10-20). Charges were brought against her for resisting arrest, disorderly conduct, and criminal assault. (Exhibit 1, p. 73, ll. 19-23). J. B. was later acquitted on all of these charges. (Exhibit 1, p. 75, ll. 18-21).

Defendants admit that some of the facts of the altercation are in dispute. However, what should be made clear, and what Plaintiff does not dispute[2], is that the issue in this case is not whether Chief Johnson violated J. B.'s rights by requesting that she follow him to the assistant principal's office or touching her shoulder. Plaintiff's claims in this suit stand or fall on the legality of Johnson's

---

[2] Plaintiff's Complaint states that "the apprehension and arrest of [J.B.] was an unreasonable search and seizure of her person by Defendant Johnson. [J.B.] had violated no municipal, state or federal law at the time of her arrest and seizure." (Complaint, Count I, ¶ 23). Thus, Plaintiff's Fourth Amendment claim only concerns the arrest of J. B., not his earlier request that she accompany him to the principal's office.

arrest following the altercation. Further, the facts relevant to the arrest have already been limited by

J. B. herself:

> Q.   Do you think you were being arrested when he put his hand on your shoulder
> or his hands on your shoulder?
>
> A.   No, sir.
>
> Q.   Do you think you were being arrested after you bit him?
>
> A.   Yes, sir.
>
> \*   \*   \*
>
> Q.   When he brought the handcuffs out was the first time that you thought you
> were going to be arrested?
>
> A.   Yes, sir.
>
> Q.   And that was after you cussed him, correct?
>
> A.   Yes, sir.
>
> Q.   And after you bit him?
>
> A.   Yes, sir.
>
> Q.   So when he was trying to get you to go see Ms. Hickman, you didn't think
> you were being arrested at that point, did you?
>
> A.   No, sir.
>
> Q.   He was going to take you to the office, right?
>
> A.   I guess so.

(Exhibit 1, p. 122, ll. 12-18; p. 123, ll. 15-23, p. 124, ll. 1-5).

Following this incident, J. B., by and through her mother, Johnnie Bogan, filed this lawsuit

in the United States District Court for the Middle District of Alabama against Chief Johnson and the

Town of Autaugaville, alleging both federal and state law claims. (Complaint). Count One of Bogan's Complaint alleges an unreasonable seizure in violation of the Fourth Amendment of the United States Constitution. Count Two alleges deprivation of J. B.'s federal constitutional right to Due Process. Count Three alleges Equal Protection violations. Count Four alleges a state law assault and harassment claim. Count Five alleges malicious prosecution, and Count Six alleges retaliation. Apparently, the retaliatory act as alleged by the Plaintiff is an incident wherein J. B. was stopped for a speeding ticket on October 27, 2005, which she claims was retaliation for the altercation with Chief Johnson. (Complaint). Plaintiff's Complaint also alleges that the Town of Autaugaville is liable based on an agency theory. Apparently, there are no federal law claims against the Town of Autaugaville.

Defendants now move for summary judgment as to each of Plaintiff's claims, as there are no genuine issues of material fact and these Defendants are entitled to judgment as a matter of law.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be entered on a claim if it is shown "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, although the Court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970), "the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party that fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). Furthermore, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a

5

verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary

judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).


## ARGUMENT

**I.    PLAINTIFF'S FOURTH AMENDMENT UNLAWFUL SEIZURE CLAIM IS DUE TO BE DISMISSED AS CHIEF JOHNSON HAD ARGUABLE PROBABLE CAUSE FOR THE ARREST AND IS ENTITLED TO QUALIFIED IMMUNITY**

Qualified immunity offers complete protection for government officials sued in their

individual capacities if their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.  *Vinyard v. Wilson*, 311 F.3d 1340, 1346

(11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396

(1982)).  In effect, qualified immunity "allow[s] government officials to carry out their discretionary

duties without the fear of personal liability or harassing litigation, protecting from suit all but the

plainly incompetent or one who is knowingly violating the federal law."  *Id.*  The analysis of

qualified immunity is undertaken utilizing a two-part analysis set forth by the United States Supreme

Court.  Under the analysis, the threshold inquiry a court must undertake is whether the plaintiff's

allegations, if true, establish a constitutional violation.  *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct.

2508, 153 L.Ed.2d 666 (2002).   If a constitutional right would have been violated under the

plaintiff's version of the facts, "the 'next, sequential step is to ask whether the right was clearly

established." *Saucier v. Katz*, U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

Chief Johnson is entitled to qualified immunity. In the context of an alleged Fourth

Amendment violation, qualified immunity applies whenever there was <u>arguable</u> probable cause for

6

a search or seizure, even if actual probable cause did not exist. *Jones v. Cannon*, 174 F.3d. 1271, 1285 n. 3 (11th Cir. 1999). Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity analysis. Arguable probable cause exists if, under all the facts and circumstances, an officer reasonably could - - not necessarily would - - have believed that probable cause was present. *Durruthy v. Pastor*, 351 F.3d. 1080, 1089 (11th Cir. 2003). Thus, "even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

In the present case, the seizure of J.B. was legal under the Fourth Amendment. However, even if it could be argued that Chief Johnson did not have actual probable cause for the seizure, an officer may, consistent with the Fourth Amendment, effect such a seizure when the officer has reasonable, articulable suspicion that criminal activity is afoot. *Illinois v. Wardlow*, 528 U.S. 119 (2000).

As set out above, J. B. admits that she was not arrested until after she bit Chief Johnson and cursed him. She was arrested for disorderly conduct, assault, and resisting arrest. Under Alabama Code 1975 Section 13A-11-7, disorderly conduct is defined as:

§ 13A-11-7. Disorderly conduct

(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

**(1) Engages in fighting or in violent tumultuous or threatening behavior;** or
(2) Makes unreasonable noise; or
(3) In a public place uses abusive or obscene language or makes an obscene gesture; or
(4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
(5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
(6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

7

It is undisputed that J. B. engaged in fighting and threatening behavior, at least recklessly creating a risk of public inconvenience, annoyance or alarm. Thus, it is clear that Chief Johnson had at least arguable probable cause to seize J. B. and effect an arrest for disorderly conduct after she admittedly fought and bit him. As can be seen by the facts and J. B.'s testimony, a fight started when Chief Johnson simply touched J. B.'s shoulder. Prior to this Chief Johnson asked her to go to the office and she ignored him. (Exhibit 1, p. 33, ll. 12-22). Further, Chief Johnson attempted to get help from a teacher. (Exhibit 1, p. 37, ll. 20-23, p. 38, ll. 1-5). It was then that J. B. simply walked away. Chief Johnson touched her arm and she became irate. It was only then that she became disorderly and was arrested. (Exhibit1, p. 122, ll. 12-18, p. 123, ll. 15-23, p. 124, ll. 1-5).

Similarly, under Alabama law, assault is defined as: an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented. *Wright v. Wright,* 654 So.2d 542, 544 (Ala.1995) (quoting *Allen v. Walker,* 569 So.2d 350, 351 (Ala.1990)). As J. B. fully admits that she intentionally bit Chief Johnson, there can be no doubt that an assault, as well as a battery, took place. Lastly, J. B. admits to fighting with Chief Johnson and hindering his attempts to place her under arrest.

As can be seen, taking the facts in the light most favorable to Plaintiff, Johnson had objective reason to believe that after Chief Johnson touched her shoulder in an attempt to stop her and see that she went to the principal's office, J. B. committed a crime and her actions warranted an arrest on the charges of assault, disorderly conduct, and resisting arrest. While Johnson could have simply chosen to ignore J. B.'s crimes, he believed misdemeanor offenses had been committed in

his presence and he certainly had no obligation to do so.

The undisputed material facts do not show that Chief Johnson's actions were objectively unreasonable under the Fourth Amendment, or so unreasonable that an officer faced with Johnson's situation would have inevitably believed the seizure was unlawful. In *Gray v. Bostic*, 458 F. 3d 1295 (11th Cir. 2006), a deputy sheriff served as a school resource officer (SRO) in the Tuscaloosa County, Alabama public school system. While serving as SRO, the deputy detained and handcuffed a nine-year-old girl after he witnessed her threaten to hit a physical education coach. While one of the other teachers at the scene told the deputy she would handle the matter, the deputy insisted that he would handle the child and took her outside the gym, where he handcuffed her for the sole purpose of punishing her. The child's mother sued the school system and the deputy sheriff in his individual and official capacity, alleging, *inter alia*, violations of the girl's Fourth Amendment rights. The deputy sheriff sought summary judgment based on qualified immunity, which was denied by the trial court. On interlocutory appeal, the Eleventh Circuit held that the "reasonableness" standard also applied to school seizures by law enforcement officers, and that the level of suspicion in a school setting needed to justify a search or investigatory stop is only reasonableness under the circumstances. *Id.* at 1305. The *Gray* Court ultimately found that qualified immunity was not available to the deputy in that case, however, because the child had become compliant and calm when the officer handcuffed her:

> The problem in this case for Deputy Bostic is that, at the time Deputy Bostic handcuffed Gray, there was no indication of a potential threat to anyone's safety. The incident was over, and Gray, after making the comment, had promptly complied with her teachers' instructions, coming to the gym wall and then to Coach Horton when told to do so. There is no evidence that Gray was gesturing or engaging in any further disruptive behavior. Rather, Gray had cooperated with her teachers and did not pose a threat to anyone's safety. In fact, Coach Horton had insisted that she would handle

9

the matter, but Deputy Bostic still intervened. Deputy Bostic does not even claim that he handcuffed Gray to protect his or anyone's safety. Rather, Deputy Bostic candidly admitted that he handcuffed Gray to persuade her to get rid of her disrespectful attitude and to impress upon her the serious nature of committing crimes. In effect, Deputy Bostic's handcuffing of Gray was his attempt to punish Gray in order to change her behavior in the future.

*Id.* at 1306.

Under *Gray*, therefore, the protection of qualified immunity is available to Chief Johnson in this case, even though he was acting in the capacity of a school resource officer. Unlike the deputy in *Gray*, however, Chief Johnson is entitled to immunity, because J. B. attacked Johnson physically, giving him probable cause for her handcuffing and arrest. There is no question that J. B. was neither calm nor compliant at the time of the arrest made by Chief Johnson. There is further no question that J. B. was not arrested until after the altercation:

Q.    Do you think you were being arrested when he put his hand on your shoulder or his hands on your shoulder?

A.    No, sir.

Q.    Do you think you were being arrested after you bit him?

A.    Yes, sir.

\*  \*  \*

Q.    When he brought the handcuffs out was the first time that you thought you were going to be arrested?

A.    Yes, sir.

Q.    And that was after you cussed him, correct?

A.    Yes, sir.

Q.    And after you bit him?

10

A.    Yes, sir.

Q.    So when he was trying to get you to go see Ms. Hickman, you didn't think you were being arrested at that point, did you?

A.    No, sir.

Q.    He was going to take you to the office, right?

A.    I guess so.

(Exhibit 1, p. 122, ll. 12-18; p. 123, ll. 15-23, p. 124, ll. 1-5).

Accordingly, this Defendant is entitled to qualified immunity and is entitled to summary judgment on Plaintiff's Fourth Amendment claim.

## II.    EVEN IF CHIEF JOHNSON'S ACTIONS WERE UNREASONABLE UNDER THE FOURTH AMENDMENT, HE IS STILL ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE LAW GOVERNING SUCH ACTIONS IS NOT CLEARLY ESTABLISHED

As set forth above, the analysis of qualified immunity is undertaken utilizing a two-part analysis set forth by the United States Supreme Court.  Under the analysis, [t]he threshold inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation.  *Hope v. Pelzer,* *supra* at 736.  Secondly, even if a constitutional right would have been violated under the plaintiff's version of the facts, the defendant is still entitled to qualified immunity if the right at issue was not "clearly established."  *Saucier v. Katz, supra* at 121.

It is the Defendants' position that Defendant Johnson did not violate J. B.'s Fourth Amendment right to be free from an unreasonable seizure[3].  It is clear that Defendant Johnson had

---

[3] Defendants in no way concede that a constitutional violation occurred. If the Court determines the first prong of the qualified immunity inquiry in the negative, obviously there is no need to address the state of the law regarding Chief Johnson's conduct. However, Defendants

probable cause to arrest J. B. after she physically assaulted and bit him. However, Plaintiff may argue that Defendant Johnson's "touching" of J. B.'s shoulder in an attempt to see that she went to the principal's office is the "unreasonable seizure" at issue. While Defendants believe that this position is untenable, and not set forth in the Complaint, they address it here briefly in the event it is raised by Plaintiff in her response.

If the Court determines that Chief Johnson's touching J. B.'s shoulder to bring her to the office is violative of the Fourth Amendment, Chief Johnson is still entitled to qualified immunity because the law was not clearly established as to whether a school resource officer can take a student to the principal's office for discipline, in the absence of a clear criminal act or search for contraband or weapons, without implicating the Fourth Amendment.

The Supreme Court, as well as the Eleventh Circuit, has consistently reinforced that the law pertaining to the conduct at issue must be "clearly established". Although exact factual identity with a previously decided case is not required, the conduct must have been clearly unlawful in light of pre-existing law. *Skop v. City of Atlanta*, 2007 U.S. App. LEXIS 10341 (11th Cir., May 3, 2007); See *also Vinyard v. Wilson*, 311 F. 3d 1340, 1350 (11th Cir. 2002)("[T]he salient question . . . is whether the state of the law . . . gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." (quoting *Hope v. Pelzer*, 536 U.S. at 741); see also *Saucier v. Katz*, 533 U.S. 194, 205 (2001)(noting that a motivating concern of this immunity inquiry is to "acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct").

Defendants have been unable to find any case law from this Circuit on point with the facts

---

proactively address the issue in such event that it is reached by the Court.

12

of Chief Johnson's "touching" of the Plaintiff in an attempt to see that she went to the principal's office. This scenario does not involve a search of a student's person or property for contraband or weapons by police, and does not involve a clear criminal act by the student at school, either in or outside the presence of the officer. There is no case law defining the terms and limitations on a school resource officer's authority to deal with students outside the context of a search for contraband or weapons or criminal actions[4]. Rather, this scenario apparently falls outside the purview of the courts thus far, and seems to be guided only by the shifting, ill-defined rules of policy and procedure within the public school systems themselves. What Plaintiff advocates is a system wherein a school resource officer, who, based on the testimony of the Autauga County Superintendent of Education, is positioned in the schools for the very purpose of providing "safety and security", would have no authority to act in any way whatsoever short of witnessing a clear criminal act. Apparently Plaintiff believes it is a violation of the students' rights –students whose presence is already controlled by state law –to question the students as to their behavior, move students from one classroom to another, or request that the students go to the administration's office.

Not only does this position not find support in the law of this Circuit, other jurisdictions have addressed this issue and declined to follow Plaintiff's reasoning. In the case of *In re Randy G.*, 26 Cal. 4th 556 (2001), the California Supreme Court was confronted with a situation where school security officers had taken a minor from a classroom to the hallway, where they found the student

---

[4] See *e.g., New Jersey v. T.L.O.*, 469 U.S. 809 (1984)(marijuana); *K.K. a child v. State of Florida*, 717 So. 2d 629 (Fla. 1998)(marijuana); *Wisconsin v. Angelia*, 564 N.W. 2d 682 (Wis. 1997) (knife); *In re D.E.M v. Commonwealth of Pennsylvania*, 727 A. 2d 570 (Pa. 1999)(gun); *Coffman v. State*, 782 S.W. 2d 249 (Tex.App. 1989) (concealed weapon); *Commonwealth v. Carey*, 554 N.E. 2d 1199 (Mass. 1990)(gun); *In re William G.*, 709 P. 2d 1287 (Cal.1985)(marijuana).

13

was in possession of a knife. The minor claimed that the officers lacked reasonable suspicion that

he engaged in criminal conduct or violated a school rule to allow a lawful detention. The court held

that the detention was reasonable:

> Encounters on school grounds between students and school personnel are constant
> and much more varied than those on the street between citizens and law enforcement
> officers. While at school, a student may be stopped, told to remain in or leave a
> classroom, directed to go to a particular classroom, given an errand, sent to study
> hall, called to the office, or held after school. Unlike a citizen on the street, a minor
> student is "subject to the ordering and direction of teachers and administrators...A
> student is not free to roam the halls or to remain in the classroom as long as she
> pleases, even if she behaves herself. She is deprived of liberty to some degree from
> the moment she enters school, and no one could suggest a constitutional infringement
> based on that basic deprivation"...Thus, when a school official stops a student to ask
> a question, it would appear that the student's liberty has not been restrained over and
> above the limitations he or she already experiences by attending school. Accordingly,
> the conduct of school officials in moving students about the classroom or from one
> classroom to another, sending students to the office, or taking them into the hallway
> to ask a question would not seem to qualify as a detention as defined by the Fourth
> Amendment. In the absence of a Fourth Amendment claim, relief, if at all, would
> come by showing that school officials acted in such an arbitrary manner as to deprive
> the student of substantive due process in violation of the Fourteenth Amendment.

*   *   *

> Neither this court nor the Supreme Court has deemed stopping a student on school
> grounds during school hours, calling a student into the corridor to discuss a school-
> related matter, or summoning a student to the principal's office for such purposes to
> be a detention within the meaning of the Fourth Amendment.

*Id.* at 563-565 (internal citations omitted).

The Court went on to express its unwillingness to hold that a violation of substantive due

process had occurred, stating, "we must acknowledge the United States Supreme Court's reluctance

to expand the concept of substantive due process". *Id.* at 564. Notably, the Eleventh Circuit has

noted the same reluctance:

> Although the Supreme Court has extended substantive due process to certain

14

unenumerated rights, it has not extended Fourth Amendment coverage to a host of other areas. In fact, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.

*McKinney v. Pate*, 20 F. 3d 1550, 1555 (11th Cir. 1994)(internal citations omitted). Accordingly, based on the case law in this jurisdiction and others, to say the least, the actions at issue have not been clearly established by the law to violate procedural due process. Further, such actions do not warrant the creation of a new right under the concept of substantive due process.

Simply put, the law regarding the conduct of Chief Johnson in this case was not clearly established, and a reasonable officer would not have automatically known that his touching a student's shoulder to see to it that she goes to the principal's office violated J. B.'s Fourth Amendment rights. In the recent *Gray* opinion of the Eleventh Circuit, discussed *supra*, the Court again held that "[t]he Fourth Amendment's general proscription against 'unreasonable' seizures seldom puts officers on notice that certain conduct is unlawful under precise circumstances". 458 F. 3d at 1307. They ultimately concluded that, unlike this case, "Deputy Bostic's conduct in handcuffing Gray, a compliant, nine-year-old girl for the sole purpose of punishing her was an obvious violation of Gray's Fourth Amendment rights. After making the comment, Gray had complied with her teachers' and Deputy Bostic's instructions...Every reasonable officer would have known that handcuffing a compliant nine-year-old child for purely punitive purposes is unreasonable". *Id.* Here, however, even if Defendant Johnson's actions were unlawful, it was not clearly established. Therefore, such a seizure cannot form the basis of a claim under the Fourth Amendment.

15

### III.   PLAINTIFF'S EQUAL PROTECTION CLAIMS FAIL

A.   Law

The Equal Protection Clause of the Fourteenth Amendment forbids any state to "deny to any person within its jurisdiction the equal protection of the law." U.S. Const. Amend. XIV. The Equal Protection Clause requires that similarly situated persons should be treated in a like manner. *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir. 1989).

B.   Chief Johnson did not violate J. B.'s Equal Protection rights

Plaintiff claims that Chief Johnson, in violation of the Equal Protection Clause, treated J. B. "different from similarly situated individuals". (Complaint). In order for Plaintiff to establish that the Defendant discriminated against her, she must establish a *prima facie* case of discrimination, showing that she was "similar situated" to other individuals who fought and bit Chief Johnson yet were not in fact prosecuted. *Fuller v. Georgia State Board of Pardons*, 851 F. 2d 1307 (11th Cir. 1988). Plaintiff cannot meet her burden of proof.

It first must be noted that J. B. has testified that she does not believe that Chief Johnson's actions involved in this case were in any way racially motivated. (Exhibit 1, p. 96, ll. 4-9). Furthermore, Plaintiff has not alleged any instances where J. B. was treated differently than any others.

Secondly, Plaintiffs' equal protection claim fails as a matter of law as Plaintiff has no evidence to show that J. B. was "similarly situated" with any others who fought Chief Johnson and who were treated differently, if any exist. Courts have typically required "overwhelming statistical evidence" to give rise to such an inference of discrimination. *Fuller, supra*, 851 F. 2d at 1309. Plaintiff has not presented any such proof, much less "overwhelming" proof. Accordingly,

16

Plaintiff's Equal Protection claim against Defendant Johnson fails as a matter of law. Additionally, Chief Johnson is entitled to qualified immunity as to Plaintiff's Equal Protection claim as well. Accordingly, this claim is due to be dismissed.

## IV.    PLAINTIFF'S DUE PROCESS CLAIM

### A.    Law

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides: "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §§ 1.  When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. *Hellenic American Neighborhood Action Committee v. City of New York*, 101 F.3d 877 (2nd Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).  When a deprivation occurs within established state procedures, the availability of post-deprivation procedures will not satisfy due process. *Hellenic*, 101 F.3d at 880.  However, in the latter case, the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post-deprivation remedy. *Id.* As Plaintiff has only alleged wrongdoing by Chief Johnson individually, Plaintiff's Due Process claim falls within this latter category.

### B.    Plaintiff's Due Process claim against Chief Johnson fails

In the present case, Plaintiffs' due process claim against Chief Johnson is extinguished by qualified immunity.  There is absolutely no evidence that Chief Johnson violated clearly established

due process law. Accordingly, summary judgment must be entered in favor of Chief Johnson.

Perhaps an even more compelling reason that summary judgment must be entered in favor of Chief Johnson on Plaintiff's Due Process claims is that even if J. B. was briefly deprived of her liberty, Plaintiff cannot show that Alabama does not, and did not, provide a meaningful post-deprivation remedy. The undisputed fact in this case is that J. B. was tried and acquitted of each of the charges against her. This fact completely precludes Plaintiffs' due process claim. Unlike substantive due process violations, procedural due process violations do not become complete "unless and until the state refuses to provided due process". *McKinney v. Pate*, 20 F. 3d 1550, 1562 (11th Cir. 1994). All that due process requires is a post-deprivation means of redress for deprivations satisfying the requirements of due process. *Id.* at 1563. Thus, even if J. B. suffered a procedural deprivation at the hands of Chief Johnson, she has not suffered a violation of her procedural due process unless the state refused to make available a means to remedy the deprivation. *Id.* Here, the state did just that – and J. B. was acquitted of all charges. Accordingly, Plaintiff's due process claim is without merit and due to be dismissed.

## V.    PLAINTIFF'S STATE LAW CLAIMS ARE DUE TO BE DISMISSED

Plaintiff's state law claims are also due to be dismissed. Under Alabama law, assault is defined as: an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented. *Wright v. Wright,* 654 So.2d 542, 544 (Ala.1995) (quoting *Allen v. Walker,* 569 So.2d 350, 351 (Ala.1990)). It is clear that J. B. was not assaulted. The encounter J. B. had with Defendant Johnson was based on at least arguable probable cause, and therefore cannot be said to

18

be unlawful. Therefore, as a matter of law, Plaintiff's assault claim fails[5].

## VI.    DEFENDANT IS ENTITLED TO DISCRETIONARY FUNCTION IMMUNITY

Chief Johnson is also entitled to discretionary function immunity for Plaintiff's claims arising under Alabama law. In 1994, the Alabama Legislature enacted Ala. Code § 6-5-338, which provides, in pertinent part, as follows:

> (a)    Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, *and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.*

> (b)    This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers....

*Ala. Code* § 6-5-338 (emphasis added).

To apply discretionary function immunity, a court must first determine whether the police

---

[5] Additionally, Plaintiff's state law harassment, malicious prosecution, and retaliation claims are due to be dismissed on the basis of discretionary immunity, discussed *infra*.

19

officer was performing a discretionary function when the alleged wrong occurred. If so, the burden shifts to the plaintiff to demonstrate that the defendant acted in bad faith, with malice or willfulness in order to deny him immunity. *Bullard, supra,* at *22, citing *Scarbrough v. Myles,* 245 F. 3d 1299, 1303 n.9 (11th Cir. 2001) (alteration in original)(applying Alabama law and quoting *Sheth v. Webster,* 145 F. 3d 1231, 1239 (11th Cir. 1998) (per curiam).

Alabama law defines "discretionary acts" as "[t]hose acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take and those requiring exercise in judgment and choice and [involving] what is just and proper under the circumstances. *L.S.B. v. Howard,* 659 So.2d 43, 44 (Ala. 1995).  Discretionary acts require "constant decision making and judgment." *Phillips v. Thomas,* 555 So. 2d 81, 85 (Ala. 1989).  The Alabama Supreme Court further noted that § 6-5-338 extended discretionary immunity to a municipal police officer "unless the officer's conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." *Wright v. Wynn,* 682 So. 2d 1 (Ala. 1996). Simply stated, the statute "shields every defendant who (1) is a 'peace officer' (2) is performing 'law enforcement duties', and (3) is exercising judgment or discretion." *Howard v. City of Atmore,* 887 So. 2d 201, 204 (Ala. 2003).

It is undisputed that Chief Johnson qualifies as a "peace officer", and was performing law enforcement duties. While Chief Johnson was at the school as the school resource officer, he was also the Chief of Police, on duty, and wearing his police uniform at all times relevant to this lawsuit. (Exhibit 1, p. 34, ll. 15-17).  There is no doubt that Johnson was serving in the capacity of an officer, and J. B. admits there was no mistake that he was an officer.  (Id.). Further, there is no evidence of the malice, willfulness, or bad faith required to overcome the immunity granted by the statute. An officer is entitled to discretionary function immunity if the officer's acts occurred in the line and

scope of his duties as a police officer, and when decisions must be made where there are no hard and fast rules as to the course of conduct one must or must not take, absent malice or willful conduct. *Bullard,* supra. Therefore, Chief Johnson is entitled to immunity and Plaintiff's state law claims are due to be dismissed.

## VII.  PLAINTIFF'S CLAIMS AGAINST THE TOWN OF AUTAUGAVILLE ARE WITHOUT MERIT

Regarding the Town of Autaugaville, a city cannot be liable pursuant to an agency theory for federal claims.  As the federal courts have made clear, before a municipality can have liability for a federal tort, the municipality must have a policy or custom that was the proximate cause of the plaintiff's alleged constitutional deprivation.  In this case, the Plaintiffs' complaint does not even allege a policy or custom was the proximate cause of her alleged deprivation..

In *Monell v. Department of Social Servs.,* 436 U.S. 658, 691-92 (1978), the Court held that a local government may not be held liable under respondeat superior for constitutional torts committed by a municipal employee.  Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.  *Monell*, 436 U.S. at 694.  *Monell* also set a high threshold for causation, requiring that the plaintiff establish that the municipal policy be the "moving force" behind the constitutional violation. *Id.*

The Court clarified the *Monell* requirements in *City of Canton v. Harris*, 489 U.S. 378 (1989), in which it held that, in limited circumstances, a municipality can be held liable for a failure

to train its police officers. Plaintiffs seeking to prevail under this theory must first prove a direct causal link between the municipal policy and the inadequacy likely to result in the violation of constitutional rights, "that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." *Riley v. Newton*, 94 F.3d 632, 638 (11th Cir. 1996)(citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

In the present case, Plaintiff has not even alleged a policy or custom of the municipal defendant. Plaintiff can present absolutely no evidence that a policy or custom of the Town of Autaugaville was the proximate cause of the alleged constitutional deprivation. Further, Plaintiff can point to no decision by a policy maker of the Town of Autaugaville that was the proximate cause of the alleged constitutional violation. Plaintiff has only asserted her claim against the Town in terms of agency. Accordingly, Plaintiff's claims against the Town of Autaugaville fail as a matter of law.

## CONCLUSION

Based on the foregoing, Defendants Levan Johnson and the Town of Autaugaville are entitled to summary judgment as to each of Plaintiff's claims, as there are no genuine issues of material fact and these Defendants are entitled to judgment as a matter of law. Plaintiff cannot present substantial evidence to support her claims of Fourth Amendment, Equal Protection, and Due Process violations, or her claims asserted under state law. Further, Chief Johnson is entitled to qualified and discretionary immunity. Lastly, Plaintiff's claims against the Town of Autaugaville are also due to be dismissed as Plaintiff fails to present a viable claim against the municipality.

22

_(signature)_

ALEX L. HOLTSFORD, JR. (HOL048)
RICK A. HOWARD (HOW045)
APRIL W. MCKAY (WIL304)
Attorneys for Defendants

OF COUNSEL:
Nix Holtsford Gilliland
      Higgins & Hitson, P.C.
P.O. Box 4128
Montgomery, AL 36103-4128
(334) 215-8585

## CERTIFICATE OF SERVICE

    I hereby certify that I have this day sent by electronic means through the Court's electronic filing system, an exact copy of the foregoing document to:

Jim L. Debardelaben
1505 Madison Avenue
Post Office Box 152
Montgomery, AL 36101-0152

This the 24th day of _May_, 2007.

_(signature)_

OF COUNSEL