IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2007 JUN 25 P 2: 50

JOHNNIE BOGAN, as next best friend )
on behalf of her minor daughter )
JENNIFER BOGAN )
 )
       Plaintiffs, )
 )
vs. )
 )
TOWN OF AUTAUGAVILLE, A )
Municipal Corporation organized under )      CASE NO: 2:06-376-SRW
the laws of the State of Alabama; )
LE VAN JOHNSON, Individually and in )
his official capacity as Police Chief of the )
Town of Autaugaville; )

       Defendants.

## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      Comes now the Plaintiff, Johnnie Bogan as next best friend on behalf of her minor daughter

J.B., and responds to Defendants' Motion for Summary Judgement. Plaintiffs' support their

opposition to the Defendants' Motion for Summary Judgment with the following:

1. The Pleadings;
2. Deposition of J.B., attached hereto as Exhibit 1;
3. Deposition of Mrs. Bonita Stewart, attached hereto as Exhibit 2;
4. Deposition of Mrs. Brenda Wilson, attached hereto as Exhibit 3;
5. Deposition of Joseph Larry Butler, attached hereto as Exhibit 4;
5. Juvenile Trial Transcript In Re: J.B., attached hereto as Exhibit 5.

### Narrative Summary of Undisputed Facts

      On or about November 19, 2004, Defendant Le Van Johnson, Chief of Police for the Town

of Autaugaville, was present at Autaugaville High School to pass out bowling passes. (Exhibit 5,

1

Juvenile Trial Transcript In Re: J.B. p.8, ll. 20-23; p.9, ll.1-6 ). While at the school, Defendant Johnson passed Plaintiff J.B. and some of her friends in one of the breeze ways. (Exhibit 1, J.B. depo. p. 24, ll. 5-7). These girls were in the breeze way with the permission of their teacher. (Exhibit 2, Stewart depo. p.14, ll.15-21).

When Chief Johnson observed the girls talking, he inquired where they had to be. (Exhibit 1, J.B. depo. p.24, ll. 19-21 ). Plaintiff J.B. indicated they had no where to be. (J.B. depo. p.25, ll. 1-2 ). At that point, Plaintiff J.B., and her friends walked inside to an area which is called the "drink room." (Exhibit 1, J.B. depo. p. 28, ll. 5-11). Plaintiff J.B. remained in the "drink room" for about two or three minutes. (Exhibit 1, J.B. depo. p. 29, ll. 5-6).

After some of the girls had bought their sodas, Plaintiff J.B., along with her friends, walked into the girl's bathroom. (Exhibit 1, J.B. depo. p.29, ll. 20-23; p.30, ll. 1-8). They remained in the girl's bathroom for two or three minutes. (Exhibit 1, J.B. depo. p. 30, ll. 12-13). Once the Plaintiff and her friends left the bathroom, they were standing against the wall talking when Defendant Johnson approached Plaintiff J.B. and told her to come with him to see Mrs. Hickman, the assistant principal. (Exhibit 1, J.B. depo. p. 30, ll. 15-23). Defendant Johnson indicated that J.B. could get a couple of days at the alternative school. (Exhibit 1, J.B. depo. p. 30, ll. 22-23). The Plaintiff ignored him and continued to walk back to the lunchroom where her teacher was. (Exhibit 1, J.B. depo. p. 34, ll. 18-20) (Exhibit 3, Brenda Wilson depo. p. 9, ll. 9-12).

Once the Plaintiff reached the lunchroom she sat down at the table with her teacher, Mrs. Stewart and another teacher, Mrs. Wilson. (Exhibit 1, J.B. depo. p. 34, ll. 20-23; p. 35, l.1, ll.5-8). Defendant Johnson followed Plaintiff J.B. to the table and told her that if she did not get up and come with him, he would grab her by her arm and drag her out of the lunchroom and embarrass her

2

in front of all the people. (Exhibit 1, J.B. depo. p.35, ll. 18-22). The Plaintiff indicated that she would not allow any (expletive) to mess with her. (Exhibit 1, J.B. p. 37, ll. 11-12). Defendant Johnson then walked over to Mrs. Booker (Exhibit 1, J.B. depo p.37, ll. 22-23; p.38, ll.1-3) and, apparently spoke to her about the situation.

While Defendant Johnson was talking to Mrs. Booker, the Plaintiff got up and walked over to her teacher, Mrs. Stewart, and explained to her what was going on. (Exhibit 1, J.B. depo. p. 38, ll. 21-23; p. 39, ll. 1-8).

At some point, Mrs. Stewart indicated that it was time to leave the lunchroom. (Exhibit 1, J.B. depo. p. 41, ll. 17-21). The Plaintiff got up and followed her class back to the classroom as instructed. (Exhibit 1, J.B. depo. p. 41-, ll. 22-23; p.42, ll. 1-2). As the Plaintiff was walking back to the classroom, Defendant Johnson jumped her from behind. (Exhibit 2, Stewart depo. p. 9, ll. 13-17; Exhibit 1, J. B. depo. p. 42, ll. 5-8). Specifically, Defendant Johnson grabbed the Plaintiff's shoulder and squeezed it causing it to hurt. (Exhibit 1, J.B. depo. p. 43, ll. 6-8, & 12-18). Defendant Johnson started wrestling with the Plaintiff and threw her against the wall causing her to hit her head on a temperature box in the hallway. (Exhibit 1, J.B. depo. p. 43, ll. 19-23; p. 44, l. 1). Defendant Johnson also applied a choke hold to Plaintiff J. B. (Exhibit 1, J. B. depo. p.44, ll. 1-2).

During the time that Defendant Johnson was wrestling with Plaintiff J. B., he continuously threatened to spray mace in her face if she did not be still. (Exhibit 1, J.B. depo. p. 45, l. 23; p. 46, ll. 1-4). Defendant Johnson wound up wrestling with the Plaintiff for about ten or fifteen minutes. (Exhibit 1, J.B. depo. p. 51, ll. 17-18). Plaintiff J. B. tried to get Defendant Johnson off of her. (Exhibit 1, J. B. depo. p. 51, ll. 19-20).

3

During the course of the altercation Defendant Johnson and Plaintiff J. B. ended up in the "drink room." (Exhibit 1, J.B. depo. p. 52, ll. 15-17). Defendant Johnson would not let the Plaintiff loose until Mrs. Hickman asked him to let Plaintiff J.B. go. (Exhibit 1, J.B. depo. p. 53, ll. 13-18). Subsequently, Defendant Johnson let the Plaintiff loose and Mrs. Stewart, Defendant Johnson, Mrs. Hickman, and Mrs. Pickett walked Plaintiff J.B. to the office. (Exhibit 1, J. B. depo p. 53, ll. 18-22).

Once everyone reached the office, Mrs. Hickman called the Board of Education. (Exhibit 1, J. B. depo. p. 55, ll. 16-20). Plaintiff J.B. was handcuffed and taken to the police station by Defendant Johnson. (Exhibit 1, J. B. depo. p. 62, ll. 10-13).

Upon reaching the police station, J.B. was detained until she could be released to her step-dad. (Exhibit 1, J. B. depo. p. 63, l. 23; p. 64, l. 1). At no time was she told that she committed a crime or that she was under arrest. (Exhibit 1, J.B. depo. p. 112, ll. 18-23; p. 113, ll. 1-7). However, subsequent to Plaintiff J. B.'s arrest, Defendant Johnson filed charges in Juvenile Court of Autauga County. These charges were resisting arrest, assault, and disorderly conduct.

On or about January 3, 2006, Plaintiff J.B. was tried for assault, disorderly conduct, and resisting arrest. After having heard all of the evidence and considered the circumstances around Defendant Johnson's encounter with Plaintiff, the Honorable Phillip W. Wood, Juvenile Court Judge, issued a ruling of not guilty on all three counts.

Following the adjudication of not guilty by Judge Wood, Johnnie Bogan filed the present law suit on behalf of Plaintiff J.B., in the United States Court for the Middle District of Alabama.

The Plaintiffs contend that Defendant Johnson's actions constitute an unreasonable seizure in violation of the Fourth Amendment of the United States Constitution. Also, the Plaintiffs allege that Defendant Johnson deprived J.B. of her federal constitution rights to due process, and he also

4

violated her equal protection rights. Finally, the Plaintiffs allege that Defendant Johnson maliciously prosecuted Plaintiff J.B. and, after the filing of the law suit, retaliated against her by virtue of various acts. (i.e., stopped for speeding ticket on October 22, 2005.)

The Plaintiffs oppose summary judgment in that it is clear from the facts of this case that there are genuine issues of material facts and that the Defendants are not entitled to a judgment as a matter of law.

## Summary Judgment Standard

A Summary Judgment must not be entered on a claim if there is any showing  that there is a genuine issue as to a material fact. On a Motion for Summary Judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the non moving party. (Federal Rule of Civil Procedure 56).

## Argument

### I.  Plaintiff J.B.'s Fourth Amendment claim is valid since Defendant Johnson had no probable cause to arrest her and his actions were not covered under Qualified Immunity.

The Fourth Amendment of the United States Constitution prevents over reaching by government and law enforcement officials.  Specifically, it guarantees that citizens shall not be subjected to unreasonable searches and seizures without probable cause. *(See 4th Amendment of The United States Constitution)*.  In the present case, Defendant Le Van Johnson arrested Plaintiff J.B. though she had not violated any known law.   Consequently, J.B.'s Fourth Amendment claim is valid and should be preserved for trial.

"It is well established law that Qualified Immunity is applicable to situations whereas government officials are sued in their official capacities for conduct which does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."
*Vinyard v. Wilson*, 311, Fed. 3d. 1340, 1346[t] (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457
U.S. 800, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)).

"The initial question of Qualified Immunity is whether, taken in light favorable to the party
asserting injury, do facts alleged show the officer's conduct violated a constitutional right." *Segert
v. Gilley*, 500 U.S. 226, 232 (1991). Here, the Plaintiffs assert that Defendant Johnson's actions did
violate a constitutional right.

Defendant Johnson himself states that he was at the Autaugaville High School to pass out
bowling passes (Exhibit 5,  Juvenile Trial Transcript In Re: J.B. p. 8, ll. 20-23; p. 9, ll. 1-6) when
he encountered Plaintiff J.B. in the breeze way of the school.  Plaintiff J. B. had the permission of
her teacher to be in the breeze way and she was not doing anything but talking to her friends.(Exhibit
2, Stewart depo. p.14, ll. 15-21).  Nevertheless, Defendant Johnson took it upon himself to ask the
girls if they had somewhere to be. (Exhibit 1, J.B. depo. p. 24, ll. 19-21).  Plaintiff J.B. responded
"Ain't got no where to be" as it was her lunch period. (Exhibit 1, J.B. depo p.25, ll. 1-2).
Apparently, Plaintiff's response angered Defendant Johnson because he started following her when
she left the breeze way area.

While Defendant Johnson was following the Plaintiff, J. B. did nothing to cause Johnson to
acquire probable cause to take her into custody.  Thus, when Defendant Johnson subsequently
grabbed her from behind and wrestled her, she possessed a lawful right to resist his unlawful actions.

In *United States v. Ulan*, 421 F.2d 787 (2d cir. 1970) the court held that "the use of
reasonable force in self defense might be justified when one is resisting unlawful arrest by an officer
or a private citizen or responding to a situation in which he is being taken into custody, cannot

6

ascertain the cause for the arrest, and is fearful of a hostile attack on his person." Applying this standard to the present case, it is clear that Plaintiff J.B. had not broken any laws, which would give rise to her seizure. It must be remembered that Defendant Johnson followed the Plaintiff from the breeze way to the "drink room," to the girl's bathroom, and then to the lunchroom. Plaintiff J.B., upon returning to the lunchroom, sat down at a table with her teacher. (Exhibit 1, J.B. depo. p.34, ll. 20-23; p.35, ll. 1 & 5-8). During the course of following the Plaintiff, Defendant Johnson never informed Plaintiff J.B. that she had broken any law and was therefore under arrest. Moreover, Defendant Johnson did not advise Plaintiff J.B.'s teacher, Mrs. Stewart, that she had done anything wrong. Given these facts, it was not unreasonable for Plaintiff J.B. to not know why the Defendant was following her, to be apprehensive of an attack, and to defend herself when the Defendant did attack her. Defendant Johnson, was clearly on a "frolic of his own" when he grabbed and attempted to arrest Plaintiff J.B., and the courts have ruled that a person can resist illegal arrest in that instance. *United States v. Martinez*, 465 F.2d 82 (2d Cir. 1977). Since Defendant Johnson's actions were such as to violate the Plaintiff's Fourth Amendment rights, and they are rights he should have been aware of, he is not entitled to Qualified Immunity.

## II. Defendant Johnson's actions were unreasonable under the Fourth Amendment and were outside of the protection of Qualified Immunity.

The Defendants do not want to admit that all the witnesses, except Defendant Johnson, did not see or hear Plaintiff J.B. say or do anything unlawful prior to Defendant Johnson attacking her.

Barrin Qwens testified at the Juvenile Court trial that at the time of the incident at Autaugaville High School, Mr. Owens was a senior. (Exhibit 5, Juvenile Trial Transcript In Re: J.B. p. 126, ll. 16-23; p. 127, ll. 1-2). Mr. Owens testified that Defendant Johnson "burst" through

7

everyone and grabbed J.B. from the back."( Exhibit 5, Juvenile Trial Transcript In Re: J.B. p. 129,

ll.11-14).  Prior to Defendant Johnson touching Plaintiff J.B., she was not saying anything. Mr.

Owens was close to the incident and never heard Defendant Johnson say anything before he came

up behind Plaintiff J.B. and grabbed her. (Exhibit 5, Juvenile Trial Transcript In Re: J.B. p. 129, ll.

7-23; p.130, ll. 1-21).

    Mrs. Bonita Stewart, is an English teacher at Autaugaville High School. (Exhibit 5, Juvenile

Trial Transcript In Re: J.B. p. 57, ll. 14-15).  She had given J.B. permission to go to the "drink

room."(Exhibit 5, Juvenile Trial Transcript In Re: J.B. p. 58, ll. 14-18).  Mrs. Stewart testified she

was never out of control of her class nor of Plaintiff J.B. (Exhibit 5, Juvenile Trial Transcript In Re:

J.B. p. 64, ll. 17-22).  Defendant Johnson never spoke to Mrs. Stewart until after the altercation.

(Exhibit 5, Juvenile Trial Transcript In Re: J.B. p. 65, ll. 5-11).

    Mrs. Stewart witnessed the actual physical altercation between Plaintiff J.B. and Defendant

Johnson. (Exhibit 5, Juvenile Trial Transcript In Re: J.B.  p. 65, ll. 12-15).  Mrs. Stewart had told

her class to go back to the classroom when Defendant Johnson came up behind Plaintiff J.B. and

grabbed her. (Exhibit 5, Juvenile Trial Transcript In Re: J.B. p. 65, ll. 16-23; p. 66, ll. 1-23).

    In her deposition Mrs. Stewart described the incident as follows:

"Q. Now, it is my understanding, you said that you had you class to leave the lunchroom.

A. Yes.

Q.  How much time–And I know you weren't, you know, actually timing it, but

approximately how much time was it between J.B. and Chief Johnson coming into the

lunchroom and your instructing the class that it was time to leave the lunchroom?

8

A. Less than five minutes.

Q. Okay. And what was he doing during that five minutes?

A. He was just pacing the entire lunchroom, He would walk up and down between the tables and then across the front of the lunchroom.

Q. Never approaching you?

A. No.

Q. And you said that as you-all were leaving out that—was there a line formed, or was it just basically everybody walking out?

A. Basically, just everybody walks out.

Q. And so that I will recall correctly, you said that as J.B. was walking out, then Chief Johnson walked up to her and grabbed her from behind?

A. (Witness nods head up and down.) It was actually like a little foot chase. I made sure that J.B. was in front of me—

Q. Sure

A. —because I knew she was upset and J.B. went out maybe three steps in front of me. I went out, and maybe two steps behind me Officer Johnson came.

In the breeze way he walked past me, got in front of me. So by the time J.B. had gotten through the doors, he was actually right behind her. She was maybe four steps inside the door before he grabbed her.

Q. Did he tell—Well, did he say anything to her before he grabbed her from behind?

A. He told her she was under arrest. And I don't know what he said for. He just told her she was under arrest.

9

Q. Okay. From what you could see, thought, had she done anything to him?

A. No.

Q. At that point, had they already engaged in the struggle?

A. No. That's how it started."

(Exhibit 2, Stewart depo. p. 16, ll. 3-23; p. 17, ll. 1-23; p. 18, ll. 1-7).

Joseph Larry Butler is the Superintendent of Education for Autauga County. (Exhibit 4, Butler depo. p.10, ll. 2-8). Butler testified that when Defendant Johnson came on the campus of Autaugaville High School he was to go through the principal's office and sign in. Butler testified that there are printed signs on the doors indicating you must check in with the front office. (Exhibit 4, Butler depo. p. 19, ll. 1-23, p. 20, ll. 1-17). It was Superintendent Butler's opinion that Defendant Johnson should have gone through school administration if he had a problem with a student. Therefore, when Defendant Johnson took action against Plaintiff J.B. without informing the school administration he was not following school protocol. (Exhibit 4, Butler depo, p. 22, ll. 16-23; p. 23, ll. 1-8;p.25, ll.1-14). Butler states that if a kid is asked to accompany a security officer to the office and the kid refuses the officer should report it to school administration and let them determine what action to take. The same applies to Defendant Johnson according to Butler. (Butler depo. p. 24, ll. 12-22; p.25 ,ll.1-14).

What we have in this case is a young lady at lunch, which is following school rules, and a Police Chief on the school campus that is not following the school rules. In this instance, J.B. was at lunch with her class, causing no problem, when Defendant Johnson approached her, questioned her then proceeded to follow her into the lunchroom and harass her by rushing past Mrs. Stewart and grabbing Plaintiff J.B. from behind. There was no criminal activity, except Defendant Johnson

10

assaulting Plaintiff J.B.

In *Beck v. Ohio*, 379 U.S. 89, 91 (1964) the Supreme court stated that "probable cause existed if at the moment the arrest was made...the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing "a crime had been committed."

Where was the crime here? No crime took place until Defendant Johnson assaulted Plaintiff J.B. Plaintiff had the right to be free of unreasonable interference by Defendant Johnson. She was a child on school property under the supervision and control of her teacher. Mrs. Stewart was not having any problem with Plaintiff J.B. and had not requested any help.

This case is very similar to the situation described in *Gray v. Bostic*, 458, F.3d 1295 (11th Cir. 2006). At the time Defendant Johnson attacked Plaintiff J.B., there was no indication that anyone's safety was threatened. J. B. was leaving the lunchroom with the rest of her class under the control of Mrs. Stewart.

Basically, Defendant Johnson is making the same argument as Deputy Bostic, in that Defendant Johnson was acting within his authority. In order to prevail in his argument that he was acting within his discretionary authority Defendant Johnson must show his actions were "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Int'l v. James*, 157 F.3d. 1271, 1282 (11th Cir. 1998).

According to the Superintendent, Defendant Johnson was required to go through the school administrators when he had a situation with a student. This was not done.

In discussing clearly established law the Court in *Gray v. Bostic*, *supra*, stated "Whether a

11

constitutional right was "clearly established" at the time of the violation turns on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Bashir*, 445 F. 3d at 1330 (quoting Saucier, 533 U.S. at 202, 121 S. Ct. at 2156.)."

It is certainly not reasonable to attack a student at school when no one's safety is being threatened. The unreasonableness of Defendant Johnson's conduct should have been readily apparent to him. His attack on Plaintiff J.B. was well beyond any hazy border that might sometimes separate lawful conduct from unlawful conduct. Defendant Johnson's conduct and actions toward Plaintiff J.B. certainly were not reasonable and he is not entitled to Qualified Immunity.

### III. Plaintiff J.B.'s Equal Protection claims were clearly violated by Defendant Johnson's actions.

The Defendants are confused about the identity of "similarly situated" individuals. Defendant Johnson was the aggressor in this situation. He attacked Plaintiff J.B. without probable cause and in a school environment in violation of the policy of the Autauga County Board of Education. Plaintiff J.B.'s similarly situated individuals are her fellow students at Autaugaville High School in Autaugaville, Alabama. Until Plaintiff J.B. was attacked from behind by Defendant Johnson there was not a problem.

The Defendants note the Plaintiff is not claiming this case was in any way racially motivated. While no race claim is made, race permeates this case. However, in *Thigpen v. Bibb County, Georgia*, 223 F.3d 1231 (11th Cir. 2000), the court determined "an equal protection case may be pursued with filing a Title VII claim. The 11th Circuit held that a Section 1983 claim predicated on the violation of a right guaranteed by the Constitution-here, the right to equal protection of the laws-

12

can be pleaded exclusive of a Title VII claim."

In this instance it is clear that Plaintiff J.B. was treated different from all the other students in the Autauga County School System. According to Superintendent Butler, all interaction with students must go through school administration. Defendant Johnson did not adhere to that policy and therefore violated Plaintiff J.B.'s right to equal protection of the law.

### IV. Defendant Johnson is not entitled Discretionary Function Immunity because he unlawfully subjected Plaintiff J.B. to illegal touching which caused her fear of imminent harm.

Since Plaintiff J.B. had not violated any laws when Defendant Johnson attempted to arrest her, there was no probable cause for him to act. Accordingly, his actions were outside of the umbrella of Discretionary Function Immunity.

Discretionary Function Immunity under Ala. Code § 6-5-338 " is applicable only when a peace officer is engaged in conduct in performance of any discretionary function within the line and scope of his or her duties." Here, Defendant Johnson was clearly not acting as a peace officer. No one, especially Plaintiff J.B. was violating the law and Defendant Johnson was at the school only to pass out bowling passes. Consequently, his actions of attacking and illegally arresting Plaintiff J.B. do not entitle him to Discretionary Function Immunity.

The Defendants correctly state that Alabama case law has defined discretionary acts as "those acts for which there are no hard and fast rule as to a course of conduct that one must or must not take and those requiring exercise in judgment and choice involving that just and proper circumstances." *L.S.B. v. Howard*, 659 So.2d 43, 44 (Ala. 1995) and they also correctly cite the case of *Phillips v. Thomas, 555 So.2d 81,85 (Ala. 1989)* for the principal that discretionary acts require constant

13

decision making and judgment. Yet there principals of law, they do not apply to the present case because the Defendant was not engaging in actions pursuant to his position as a law enforcement officer.

No one but Defendant Johnson has testified that, Plaintiff J.B. had acted unlawfully when Defendant Johnson grabbed her to effect an arrest. In fact all the witnesses state that J.B. was not doing anything wrong. In light of this, what discretionary act did Defendant have to take? The answer is none. There is no evidence to support that Defendant Johnson had to make a decision as to how to act in the situation. He clearly acted out of anger. Despite the fact that Defendant Johnson unlawfully touched J.B., they state that Plaintiff J.B. does not have valid state law claims. Moreover, they state that she was not touched in an intentional rude and angry manner under such circumstances as to create the threat of imminent harm. However, the Defendants' argument on this point is also not supported by the testimony.

Before Defendant Johnson grabbed Plaintiff J.B. he had followed her around the school during which time he threatened her with the possibility of arranging for her to do time at the alternative school. (Exhibit 1, J.B. depo. p. 30, l. 23). This was clearly outrageous conduct and created apprehension in the mind of Plaintiff J.B. In fact, the Plaintiff was so aware of Defendant's animosity she stated to the Defendant that she would not allow any (expletive) to put their hands on her. (Exhibit 1, J.B. depo. p.37, ll. 11-12). This comment clearly indicates that Plaintiff J.B. anticipated that Defendant Johnson might unlawfully touch her.

When Defendant Johnson grabbed the Plaintiff, he did so with enough force to cause pain. (Exhibit 1, J.B. depo. p. 43, ll. 4-9).

14

Another indication of Defendant Johnson's mindset is that he also threatened to mace Plaintiff J.B. (Exhibit 1, J.B. depo p.46, ll. 1-18). Coupled with the physical attack itself, it is not hard to infer that Defendant Johnson intended to cause fear in Plaintiff J.B. Defendant Johnson was acting unlawfully when he attacked and threatened to mace Plaintiff J.B.

Finally, "a state agent shall not be immune from civil liability in his official or personal capacity: 1) when the Constitution or laws of the United States or the Constitution of this state or laws, rules, or regulations of the state enacted or promulgated for purpose of a governmental agency require otherwise; or 2) when the state agent acts willfully, maliciously, fraudulently, in bad faith beyond his or her authority or under a mistaken interpretation of the law." *Ex Parte Cranman*, 792 So.2d. 392 (Ala. 2000).

### Conclusion

Defendant Johnson clearly violated Plaintiff J.B.'s civil rights without having any probable cause. Plaintiff J.B. was not breaking the law, and had not broken any school rules when Defendant Johnson approached her, questioned her, followed her, or grabbed her and tried to take her into custody. The present case is clearly one wherein a law enforcement agent violated established Constitutional law by effecting arrest when there was no probable cause to do so. Defendant Johnson, as Chief of Police of the Town of Autaugaville, had to know that he did not have a right to arrest a child who had not broken the law. Even more, he had to realize that he had no right to attack Plaintiff J.B. from behind and threaten her with mace when she had done nothing wrong.

The foregoing facts, considered, the Defendants are not entitled to Summary Judgment.

15

The facts of this case are such that there are genuine issues of material facts.

Respectfully submitted this the 25th day of June, 2007.

Jim L. DeBardelaben (DEB003)

Milton J. Westry (WES021)
Attorneys for the Plaintiffs

**OF COUNSEL:**
Jim L. DeBardelaben, Esq.
Milton J. Westry, Esq.
Attorneys At Law
Post Office Box 152
Montgomery, Alabama 36101-0152
(334) 265-9206

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing document with the Federal Court Clerk and served upon the following by hand delivery on this the 25th day of June, 2007.

Rick A. Howard, Esq.
Alex L. Holtsford, Jr., Esq.
April W. McKay
Nix Holtsford Gilliland Higgins & Hitson, P.C.
P.O. Box 4128
Montgomery, Alabama 36103-4128

Jim L. DeBardelaben
Of Counsel

16