# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| Johnnie Bogan, as next best friend | * | |
| on behalf of her minor daughter, J.B. | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | 2:06-376-SRW |
| | * | |
| Town of Autaugaville, et al., | * | |
| | * | |
| Defendants. | * | |

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants, Town of Autaugaville and Chief LeVan Johnson, and in reply to Plaintiff's response to Defendants' motion for summary judgment, submit the following:

## FACTS

Defendants maintain that the Narrative Summary of Undisputed Facts set forth in their Motion for Summary Judgment Memorandum Brief is correct, and that the facts relevant to the determination of these Defendants' liability need no further elaboration. However, Defendants will briefly address some of the fact statements provided by Plaintiff in her response and reiterate the relevant facts that are in evidence.

Plaintiff asserts that "when Chief Johnson observed the girls talking, he inquired where they had to be...Plaintiff J.B. indicated they had no where to be" (Response Brief, p. 2). While this is true, Plaintiff fails to mention that J.B. at first ignored the Chief's questions, and it was only after he repeatedly asked where she was supposed to be that she responded. J. B. herself admitted this in her deposition, which was quoted in Defendant's initial brief.

Secondly, the focus of much of Plaintiff's argument is her assertion, based on the Superintendent of Education's "opinion", that Defendant Johnson "should have gone through school administration if he had a problem with a student". (Response Brief, p. 10). However, Plaintiff also admits in her brief that Defendant Johnson did attempt to go through the administration, in that "Defendant Johnson approached Plaintiff J.B. and told her to come with him to see Mrs. Hickman, the assistant principal". (Response Brief, p. 2). Plaintiff also admits that Defendant Johnson sought the assistance of the teacher in the lunchroom, again seeking to go through the "proper channels" as claimed by Plaintiff. (Response Brief, p. 3). Thus, regardless of the weight to be accorded the superintendent's opinion, the evidence contradicts the Plaintiff's assertion that the Defendant violated some vague, undefined, and unwritten, "rule".

Much of Plaintiff's response to Defendants' Motion for Summary Judgment misstates the relevant facts or fails to mention the testimony already in evidence, injects "facts" not in evidence, or asserts irrelevant "opinion"of the Plaintiff's counsel and others as opposed to legal precedent. However, as shown in Defendants' Motion for Summary Judgment, there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law. Plaintiff now attempts to characterize and recreate the incident between J.B. and the Defendant contrary to J.B.'s own version of the facts, to which she testified under oath. However, even considering the Plaintiff's assertions, the arguments put forth do not present substantial evidence of each element of Plaintiff's claims, do not present a genuine issue of material fact, and are not sufficient to overcome summary judgment based on the legal grounds asserted. Defendants motion for summary judgment, based on the application of the appropriate law to the facts in evidence, is due to be granted.

2

## ARGUMENT

## I.   CHIEF JOHNSON HAD ARGUABLE PROBABLE CAUSE FOR THE ARREST OF J.B. AND IS ENTITLED TO QUALIFIED IMMUNITY

Plaintiff asserts that qualified immunity is not applicable because Defendant Johnson arrested J.B. "though she had not violated any known law". (Response Brief, p. 5). However, this assertion is disputed by J. B. herself. As set out in Defendants' Motion for Summary Judgment, J.B. admits that she was not arrested until after she bit Chief Johnson and cursed him. She was arrested for disorderly conduct, assault, and resisting arrest. Under Alabama Code 1975 Section 13A-11-7, disorderly conduct is defined as:

§ 13A-11-7. Disorderly conduct

(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

> **(1) Engages in fighting or in violent tumultuous or threatening behavior;** or
> (2) Makes unreasonable noise; or
> (3) In a public place uses abusive or obscene language or makes an obscene gesture; or
> (4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
> (5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
> (6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

It is undisputed that J. B. engaged in fighting and threatening behavior, at least recklessly creating a risk of public inconvenience, annoyance or alarm. Thus, it is clear that Chief Johnson had at least arguable probable cause to seize J. B. and effect an arrest for disorderly conduct after she admittedly fought and bit him. As J. B. testified, a fight started when Chief Johnson simply touched

3

J. B.'s shoulder.[1]  Prior to this, Chief Johnson had asked her to go to the office and she ignored him. Chief Johnson also attempted to get help from a teacher.  It was then that J. B. walked away. Chief Johnson touched J.B.'s arm and she became irate. It was at this point that she became disorderly and was arrested.

Similarly, under Alabama law, assault is defined as: an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented. *Wright v. Wright,* 654 So.2d 542, 544 (Ala.1995) (quoting *Allen v. Walker,* 569 So.2d 350, 351 (Ala.1990)). As J. B. fully admits that she intentionally bit Chief Johnson, there can be no doubt that an assault occurred. Lastly, J. B. admits to fighting with Chief Johnson and hindering his attempts to place her under arrest.  Plaintiff now cites testimony from other witnesses to purportedly dispute this. However, this testimony does not create a question of fact to provide grounds to overcome summary judgment, where that testimony contradicts J.B.'s <u>own</u> testimony.

Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Under the qualified immunity analysis established by the United States Supreme Court, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a

---

[1] Plaintiff now claims that Defendant Johnson "jumped her from behind". (Response Brief, p. 3).  However, J.B. made clear in her deposition that Johnson merely touched her shoulder.

4

constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). If a constitutional right would have been violated under the plaintiff's version of the facts, "the 'next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

In the context of an alleged Fourth Amendment violation, qualified immunity applies in this Circuit whenever there was <u>arguable</u> probable cause for a search or seizure, even if actual probable cause did not exist. *Jones v. Cannon*, 174 F.3d. 1271, 1285 n. 3 (11th Cir. 1999). Thus, "even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). In her responsive Brief, Plaintiff does not even address arguable probable cause, but only argues that Defendant Johnson lacked actual probable cause for the arrest.[2]

The undisputed facts do not show that Defendant Johnson's actions were objectively unreasonable under the Fourth Amendment, or so unreasonable that an officer faced with Johnson's situation would have inevitably believed the seizure was unlawful. Accordingly, this Defendant is entitled to qualified immunity and to summary judgment on Plaintiff's Fourth Amendment claim.

Furthermore, even if Chief Johnson's actions were unreasonable under the Fourth Amendment, he is still entitled to qualified immunity because the law governing such actions is not clearly established. As set forth in Defendants' Motion for Summary Judgment, even if a constitutional right would have been violated under the plaintiff's version of the facts, the defendant

---

[2] Furthermore, Plaintiff primarily cites case precedent from the Second Circuit of Appeals regarding probable cause. The case law in the Eleventh Circuit is well-established in this area. Therefore, analyzing the case law from outside our Circuit is not only lacking in precedential value, but is also unwarranted.

is still entitled to qualified immunity if the right at issue was not "clearly established." If the Court determines that Chief Johnson's touching J. B.'s shoulder to bring her to the office violated J.B.'s rights under the Fourth Amendment, Chief Johnson is still entitled to qualified immunity because the law was not clearly established as to whether a school resource officer can take a student to the principal's office for discipline, in the absence of a clear criminal act or search for contraband or weapons, without implicating the Fourth Amendment. In summary, there does not appear to be any caselaw guidance as to whether a school resource officer can take a student to the principal for discipline in an attempt to maintain the general order of students.

Plaintiff cites *Gray v. Bostic*, 458 F. 3d 1295 (11th Cir. 2006), to support her position that the law in this area was well-established. Defendants also discussed this case in their initial brief. Plaintiff, however, does not analyze the similarities and differences between the case at bar and *Gray*. Plaintiff simply opines that "it is certainly not reasonable to attack a student at school when no one's safety is being threatened". (Response Brief, p. 12). However, it is clear, based on the testimony of J.B. herself, that Defendant Johnson did not "attack" her, and further, that Defendant Johnson's safety was certainly threatened. Thus, Plaintiff assertion that "his attack on J.B. was well beyond any hazy border that might sometimes separate lawful conduct from unlawful conduct" is unsupported by facts in evidence.

Furthermore, as stated in Defendants' initial brief, there appears to be no case law from this Circuit on point with the facts of Chief Johnson's "touching" of the Plaintiff in an attempt to see that she went to the principal's office. Plaintiff does not dispute this in her brief, and merely states that

*Gray* is "very similar"[3]. (Response Brief, p. 11). However, there is no case law defining the terms and limitations on a school resource officer's authority to deal with students outside the context of a search for contraband or weapons or criminal actions.

Thus, the law regarding the conduct of Chief Johnson in this case was not clearly established, and a reasonable officer would not have automatically known that his touching a student's shoulder to see to it that she goes to the principal's office might violate J. B.'s Fourth Amendment rights. In the recent *Gray* opinion of the Eleventh Circuit, relied upon in both parties' briefs, the Court again held that "[t]he Fourth Amendment's general proscription against 'unreasonable' seizures seldom puts officers on notice that certain conduct is unlawful under precise circumstances". 458 F. 3d at 1307. Similarly, in the present case, even if it could be argued that Officer Johnson's actions of attempting to see that Plaintiff went to the principal's office for discipline might have violated the Fourth Amendment, it is certainly not established law. Moreover, disciplining a student may be more in line with a due process claim than a Fourth Amendment claim.

Plaintiff has not presented any law that a school resource officer violates the Fourth Amendment when the officer simply seeks to take the student to the principal's office to maintain order in the school. Because there is no case in the Eleventh Circuit setting forth a test, rule, or standard to determine when a police officer, acting as a school resource officer, can take steps to maintain order in the school, outside the arena of a search for contraband or illegal behavior, Officer Johnson is entitled to qualified immunity.

---

[3] Furthermore, the *Gray* opinion was decided some two years after the conduct at issue in this lawsuit. Thus, while it is certainly an instructive case, it cannot be said that even similar conduct was clearly unlawful simply on the basis of that opinion.

7

## II.    PLAINTIFF'S EQUAL PROTECTION CLAIMS ALSO FAIL

Plaintiff claims that Chief Johnson, in violation of the Equal Protection Clause, treated J. B. "different from similarly situated individuals", "her fellow students at Autaugaville High School". (Response Brief, p. 12). Without citing to any evidence whatsoever, Plaintiff claims that J.B. was treated "different from all the other students in the Autauga County School System". (Response Brief, p. 13). However, Plaintiff has not shown that she was "similar situated" to other individuals who fought and bit Chief Johnson yet were not in fact prosecuted. Furthermore, while Plaintiff contends that "race permeates this case" (Response Brief, p. 11), J. B. has testified that she does not believe that Chief Johnson's actions involved in this case were in any way racially motivated. Quite simply, Plaintiff has not presented any evidence that J. B. was treated differently than any others.

Accordingly, Plaintiff's Equal Protection claim against Defendant Johnson fails as a matter of law.

## III.    PLAINTIFF'S DUE PROCESS CLAIM IS DUE TO BE DISMISSED

Plaintiff does not present any argument in her brief as to why summary judgment should not be granted on her due process claim. Thus, Defendants assume that Plaintiff has abandoned this claim. However, in an abundance of caution, Defendants again stress that this claim has no merit as even if J. B. was briefly deprived of her liberty, Plaintiff cannot show that Alabama does not, and did not, provide a meaningful post-deprivation remedy. The undisputed fact in this case is that J. B. was tried and acquitted of each of the charges against her. This fact completely precludes Plaintiffs' due process claim.

8

## IV.  DEFENDANT JOHNSON IS ENTITLED TO DISCRETIONARY FUNCTION IMMUNITY

To apply discretionary function immunity under *Ala. Code* § 6-5-338, a court must first determine whether the police officer was performing a discretionary function when the alleged wrong occurred. If so, the burden shifts to the plaintiff to demonstrate that the defendant acted in bad faith, with malice or willfulness in order to deny him immunity.  Alabama law defines "discretionary acts" as "[t]hose acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take and those requiring exercise in judgment and choice and [involving] what is just and proper under the circumstances. *L.S.B. v. Howard*, 659 So.2d 43, 44 (Ala. 1995).  As set forth in Defendants' Motion for Summary Judgment brief, there were no "hard and fast rules" governing Chief Johnson's conduct under these circumstances.   Alabama immunity law "shields every defendant who (1) is a 'peace officer' (2) is performing 'law enforcement duties', and (3) is exercising judgment or discretion." *Howard v. City of Atmore*, 887 So. 2d 201, 204 (Ala. 2003). There is no doubt that Defendant Johnson was serving in the capacity of an officer, and J. B. admits there was no mistake that he was an officer, performing law enforcement duties.  Further, there is no evidence of the malice, willfulness, or bad faith required to overcome the immunity granted by the statute.  Plaintiff "infers", without any evidentiary support, that Defendant Johnson "acted out of anger". (Response Brief, p. 14). However, this unsupported inference is insufficient to overcome summary judgment as a matter of law. *Gooden v. City of Talladega*, 2007 Ala. LEXIS 33, *25 (Ala. March 2, 2007)("speculation and conclusory allegations are insufficient to create a genuine issue for trial").   Accordingly, Plaintiff's state law claims are also due to be dismissed, on grounds of discretionary function immunity.

## V.    PLAINTIFF'S CLAIMS AGAINST THE TOWN OF AUTAUGAVILLE ARE DUE TO BE DISMISSED

Plaintiff also presents no argument in her brief as to why the claims against the municipality should not be dismissed. It is assumed that these claims are now also abandoned. As set out in Defendants' Motion for Summary Judgment brief, a city cannot be held liable pursuant to an agency theory, and no evidence has been presented of a policy or custom that was the proximate cause of the Plaintiff's alleged constitutional deprivation. Accordingly, the claims against the Town of Autaugaville must be dismissed.

## CONCLUSION

Defendants Levan Johnson and the Town of Autaugaville are entitled to summary judgment as to each of Plaintiff's claims, as there are no genuine issues of material fact and these Defendants are entitled to judgment as a matter of law. Plaintiff has not presented substantial evidence to support her claims of Fourth Amendment, Equal Protection, and Due Process violations, or her claims asserted under state law[4], or to refute Defendant Johnson's entitlement to qualified and discretionary immunity. Thus, summary judgment is due to be granted in favor of these Defendants as to each claim asserted in Plaintiff's Complaint.

---

[4] As stated above, it appears that Plaintiff has abandoned her due process claim, as well as her claims against the Town of Autaugaville.

s/ Rick A. Howard
_____
ALEX L. HOLTSFORD, JR. (HOL048)
RICK A. HOWARD (HOW045)
APRIL W. MCKAY (WIL304)
Attorneys for Defendants

OF COUNSEL:
Nix Holtsford Gilliland
      Higgins & Hitson, P.C.
P.O. Box 4128
Montgomery, AL 36103-4128
(334) 215-8585

## CERTIFICATE OF SERVICE

    I hereby certify that I have this day sent by electronic means through the Court's electronic filing system, an exact copy of the foregoing document to:

Jim L. Debardelaben
1505 Madison Avenue
Post Office Box 152
Montgomery, AL 36101-0152

    This the 25th day of June, 2007.

s/ Rick A. Howard
_____
OF COUNSEL

11